

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 1 2 2021 ★

**BROOKLYN OFFICE**

------------------------------------------------X

UNITED STATES OF AMERICA,

     *Plaintiff,*

     v.

RONALD FILOCOMO,

     *Defendant.*

Case No. 1:02-CR-307-NGG-31

Hon. Judge Nicholas G. Garaufis

------------------------------------------------X

## MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

NOW COMES the Defendant RONALD FILOCOMO, appearing *pro se*, and respectfully motions the Court to terminate the imposed term of supervised release pursuant to 18 U.S.C. §3583(e)(1) and Fed R. Crim. P. 32.1(c)(2)(C). No hearing is sought in this matter per Fed R. Crim. P. 32.1(c)(2)(B).

Argument Summary: Section 3583(e) allows Article III judges to terminate a term of supervised release if it is in the interest of justice and warranted by the defendant's conduct. This petition deserves to be granted because:

- The goals of supervision have been reached, the need for further supervision is no longer needed and the interests of justice are served by granting this request;

- I meet all eight criteria from §3553(a) that are pertinent to this type of request;

- I meet all nine policy criteria for a probationary recommendation from Monograph 109;

1


RECEIVED
JUL 12 2021
PRO SE OFFICE

- I pose zero risk to re-offend for the remainder of my life; and,

- Other local cases where decisions on early termination of supervised release support the instant motion.

## Case History

1. I was indicted, with many other co-defendants, in a wide-ranging indictment related to organized crime and the Bonanno family in New York. I was co-defendant #31 on this case and was charged with, among other things, Racketeering. I pleaded guilty to Racketeering in late 2004 in violation of 18 U.S.C. §1962(d).

2. At the same time, I was serving an 8-year concurrent sentence in New Jersey state criminal confinement.

3. This Court sentenced me on March 25, 2005 to a term of 20 years of imprisonment followed by 5 years of supervised release. Doc. 886.[1]

4. I appealed my conviction and sentence, and that appeal was dismissed by the 2nd Circuit. Doc. 911. I also applied for compassionate release in 2016 (Doc. 1068) and that, too, was denied. Doc. 1070.

5. I completed my sentenced on June 12, 2020 and began my supervision here in Boynton Beach, Florida. I have now served one year on supervised release, and have become eligible to submit a request for early termination.

---

1 "Doc. #" refers to the docket entry in this Court's PACER record.

2

**Statutory Authority, Circuit Precedent, and Policy Overview**

6. 18 U.S.C. § 3583(e)(1) states that, after considering several factors expressed in 18 U.S.C. § 3553(a),[2] the Court may terminate a term of supervised release and discharge the defendant after serving one year of supervision if it is warranted by the conduct of the defendant and it is in the "interest of justice".[3]

7. Of the nine factors in §3553 that are considered at original sentencing hearings, only eight are present here. The only factor at sentencing that is missing from consideration of an early termination of supervised release request is §§(a)(2)(A): "the need for the sentence imposed – to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]"

8. It follows from this that supervised release is not punishment, and an early termination request doesn't ponder the seriousness of the originating offense, but rather asks the Court to determine if further supervision is needed to accomplish the goals of supervision. The interests of justice can be served, in my case, by early termination.

> "Early discharge or another form of modification is appropriate to 'account for new or unforeseen circumstances' not contemplated at the initial imposition of supervised release." *United States v. Rasco,* No. 88CR817 (CSH), 2000 WL 45438, at *2 (S.D.N.Y. Jan. 19, 2000) (quoting *United States v. Lussier,* 104 F.3d 32 (2nd Cir. 1997)).

9. Although the oft-used "exceptional conduct" and "changed circumstances"

---

2 Specifically, the Court is to consider (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

3 Title 18 U.S.C.A. §3583(e)(1).

standard set by the *Lussier* Court, *id,* has now been nullified by U.S.S.G

§5D1.2, the authority *Lussier* proscribes judges to allow for early termination

has not. The Second Circuit has now clarified that *Lussier* did not create a

mandate for these conditions to be met.

> "The Court of Appeals for the Second Circuit has Declared that *Lussier* cannot be read to mandate additional requirements for termination or modification." *United States v. Trotter,* 321 F.Supp3d 337, 360 (E.D. New York, 2018).

> "New or changed circumstances are not required in order to modify conditions of release, but changed circumstances may in some circumstances justify modification." *United States v. Parisi*, 821 F.3d 343, 347 (2nd Cir. 2016).

> "The Supreme Court has described supervised release as "the decompression stage" between prison and full release." *United States v. Kappes,* 782 F.3d 828 (7th Cir. 2015) (Quoting *Johnson v. United States,* 529 U.S. 694, 709 (2000)).

> "A district court may terminate superivsed release before the expiration of a mandatory minimum period." *Trotter* at 360 (quoting *Pope v. Perdue,* 889 F.3d 410, 414 (7th Cir. 2018).

10. Policy on early termination on supervised release can be found both in

Monograph 109 for probationary policy,[4] and in the Sentencing Guidelines

Manual in §5D1.2. Fundamental to this pleading, the Commission changed

---

4 *Supervision of Federal Offenders*, (Guide to Judiciary Policy, Vol. 8E, Ch. 3 at 28-29)

this section of the Manual in 2011 to specifically encourage courts to consider early termination of supervised release in "appropriate cases." The only example of an appropriate case is a former addict that completes substance abuse treatment successfully, thereby reducing his likelihood of recidivism to the community.

11. It is noteworthy that this policy shift in the Guidelines Manual, along with the *Parisi* case, effectively nullifies the oft-used "exceptional conduct" and "changed circumstances" standard set by the *Lussier* Court.

12. I have thus far served the requisite year on supervision before a request of this nature can be made. My conduct since release raises to *Lussier* standards, even if those are no longer requirements under *Parisi*.

13. All of the factors this Court must consider under §3553(a) when deciding to terminate a term of supervised release early, in addition to those it may consider, *id.,* weigh in favor of early termination in my case. These factors are discussed below.

## Discussion of 18 U.S.C. §3553 Factors

14. I have a much different life today that I did before my incarceration. I spent my time incarcerated well, teaching music (drums) and acting as a personal trainer for inmates over 50 years old. I also spent time behind bars talking to kids about avoiding a life of crime, and avoiding being around criminal activity.

15. When I wasn't busy doing those things, I was in classes of my own. I received over 160 certificates of completion of different classes. After my release I was evaluated for any psychologically therapeutic needs and was determined to be in no need of such treatment.

16. My history and character is at issue in §3553(a)(1) as is the nature and circumstances of the offense. The racketeering I participated in, which lead to this case, cannot be changed. I don't attempt here to minimize it or my part in organized crime.

17. However, what I *can* change is my character, and I've demonstrated as much since my release. I am still married to my long-suffering wife of 48 years. I work in the service department of Ed Morse Del Ray Toyota here in Florida. While in halfway house custody, and before I was busy with a job, I spent my time feeding the homeless and veterans in the food line there. I also attend church weekly with my wife.

18. At 71 years old, I cannot do all I want to do to give back to the community, but I can do what I can, with what I have at my disposal, where I am.[5]

19. In terms of recidivism, this Court need not worry. I am of nearly zero risk of re-offense as measured by several metrics. First, because I was sentenced in Criminal History Category of I, I present a risk 5x lower than defendants who were sentenced in Category VI. Second, because of my age. Offenders over

---

5  My apologies to Theodore Roosevelt for this paraphrasing/plagiarism.

the age of 60 when release from prison have a recidivism rate of under 4%.[6][7] There is nearly no chance that I will offend again for the remainder of my life.

20. It is agreed upon by ever study conducted that early termination does not jeopardize community safety.[8] In fact, defendants who have their terms of supervised release terminated early are arrested less often, and for less severe felonies than their full term counterparts.[9]

21. Early termination, itself, accomplishes the goals of deterrence and protection of the public. I have a good marriage, a stable residence, a steady job, and no correctional needs that could be facilitated by more time on supervised release. §3553(a)(2)(B)-(D).

22. I was sentenced to the kinds and ranges of sentences available to me at the time. Specifically, here, I was sentenced to five years of supervised release, which is the maximum term allowable under §3583(b)(1). Since I have served more than one year on supervision, and less than the maximum term allowed, I am within the ranges that would make early termination appropriate.

23. Policy is discussed in greater detail in the next section of this brief. However, the Guidelines Manual specifically recommends early termination

---

6  Recidivism Among Federal Offenders: A Comprehensive Overview; (2106), Appendix A-3. (United States Sentencing Commission).

7  Trends in State Parole, 1999 – 2000; (2001) U.S. Department of Justice Bureau of Just ice Statistics,.

8  Early Termination of Supervision: No Compromise to Community Safety; Barber and Johnson; Federal Probation Journal, Vol. 77 No. 2 (September 2013). Published by AOUSC-OPPS.

9  See James L. Johnson, Are Early Terminated Offenders a Greater Risk to the Community? NEWS AND VIEWS, Vol. XXXV, No. 2, at 1 (Jan 18, 2010). Published by AOUSC-OPPS

for defendants who have completed correctional treatment and have minimized their recidivism risk to the community. I have done and completed all correctional rehabilitation made available to me and, as previously argued, my recidivism risk is near zero. See U.S.S.G. §5D1.2 App. N. 5.

24. Other defendants convicted of similar conduct are particularly relevant when speaking about sentencing disparities in the context of early termination. An analysis of those similar cases is useful to determine if early termination is warranted here.

25. *United States v. Fenza*, No. 2:03-CR-921 (E.D.N.Y. Aug 2, 2013), Defendant Fenza was convicted of Racketeering and petitioned his Court for early termination. This case emphasizes the difference between policies from 2013 until today. In *Fenza*, Hon. Judge Spatt relied heavily on *Lussier* to deny early termination, relying on those standards that were later retracted by the 2nd Circuit in 2016 in *Parisi*. "[E]arly termination is not warranted as a matter of course; on the contrary, it is only 'occasionally' justified due to 'changed circumstances' of a defendant, such as 'exceptionally good behavior.'" *Id.* (Quoting *Lussier* at 36).

26. Famously, in *United States v. Medina,* 17 F.Supp. 2d 245 (S.D.N.Y. 1998) and later in *United States v. McKay,* 352 F.Supp 2d 359 (E.D.N.Y. 2005) *Lussier* is expanded to exclude compliant conduct as not enough to warrant early termination.

27. *Parisi* totally changed the landscape of early termination requests in the 2nd Circuit, and policy has changed to make early termination a normal course of supervised release instead of an exceptionally rare remedy. To his credit, Hon. Judge Spatt has release several defendants from their supervision as a normal course of a supervised release period since *Fenza*. See *United States v. Banks,* No. 2:14-CR-158 (E.D.N.Y. May 29, 2019) and *United States v. McFadden,* No. 2:06-CR-693 (E.D.N.Y. Dec 5, 2016).

28. Finally, I have no restitution nor fines, and I have paid my special assessment, so §3553(a)(7) has no affect on this motion.

## Discussion of Relevant Policy Considerations

29. Consideration of policy statements in any sentencing decision is required by §3553(a)(5):

> (5) any pertinent policy statement—

> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

30. Policy on early termination of supervised release generally comes from two sources. The Sentencing Commission policy is explicitly listed here under subsection (A). That policy was discussed briefly in the sentencing factors discussion, above.

31. However, policy specific to the Judiciary Conference Committee on Criminal Law is also applicable, and is implicitly invoked under subsection (B). "While the Policy conclusions of the Judicial conference may not be binding on the lower courts, they are at the very least entitled to respectful consideration." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010).

32. The policy of the Sentencing Commission on early termination of supervised release comes from U.S.S.G. §5D1.2 in application note 5. The first time this policy actively encouraged early termination of supervised release was in 2011 with Amendment 756 to the Guidelines Manual.

33. That amendment added application note 5, which begins by encouraging early termination this way: ""The court is encouraged to exercise this authority in appropriate cases." The only example of an appropriate case is a defendant with substance abuse issues who successfully completes treatment and kicks their addiction. This, reasons the Sentencing Commission, reduces their recidivism risk to the community and thus satisfies the main purpose of supervised release (rehabilitation).

34. The policy of the Judiciary on early termination of supervised release comes from the policy manual on supervising federal offenders post-incarceration.

35. Formerly titled Monograph 109, this policy manual was updated in 2018[10] with the new title "Post-Conviction Supervision" and goes into great detail about all aspects of supervising federal offenders.

10 Transmittal 080-40, July 2, 2018.

36. Before 18 months is completed, the Court must consider whether the defendant has fully demonstrated that they can self-manage a lawful existence and has completed all (achievable) conditions of supervised release.

37. It is easy to observe that I have completed all the goals of supervision and rehabilitation set forth for me. I have achieved many things since my sentencing date, and many of those things I am quite proud of. I spent my time incarcerated helping others through music and physical training. I bettered myself during this time as well, availing myself to nearly every class, course, and program made available to me in the BOP. I fully embody the defendant the Guidelines Manual observes as recommended for early termination.

38. My ability to lawfully self-manage is a little more difficult to demonstrate. I have remained a law-abiding citizen since my release from the BOP, but absence of a violation is not proof, by itself, of rehabilitation. The factors that aid this determination were discussed in the recidivism section of the §3553(a) factors above.

39. My actions since release have demonstrated that I can lawfully self-manage my life. The statistics above, showing me as posing nearly no risk of recidivism, mixed with my low RPI score, demonstrate together that I am able to lawfully self-manage long passed the expiration of my period of supervision. These together weigh judiciary policy in favor of recommending early termination here.

**Hardship Reasons for Early Termination**

40. Since I spent many years in prison, and due to my age, I have several medical issues that will soon require interstate, or at least inter-district travel. I have Scoliosis in my back, high blood pressure, and several other maladies that will only degenerate as I age.

41. I had shoulder replacement surgery in 2016 while I was in prison. I got a bleeding ulcer from the wrong medication before that surgery and was shipped to FCI Ft. Devins. I stayed there for over a year post-surgery until I was able to travel to my previous prison.

42. I also have a plate in my righter femur, had elbow surgery in my right arm, and my right knee was operated on (poorly) while I was incarcerated.

43. I will need to be able to travel interstate occasionally, and inter-district often, to freely go to doctor's appointments. I am a senior citizen now, far removed from my days in the Bonnano organized crime family. I pose no threat to anybody and my body is failing me. Early termination is appropriate in my specific case for these reasons, and all the other reasons argued herein.

## Conclusion

Considering the cost of supervision, and based upon the reasons and factors discussed in this motion, I respectfully request that this Court terminate the remainder of my term of supervised release.

Respectfully submitted on this __6__ day of __July__, 2021.

RONALD FILOCOMO
*Pro Se* Defendant, Movant
(561) 634-1928
RonFilocomo@icloud.com
Boynton Beach, FL 33436

## CERTIFICATE OF SERVICE
## FOR PRO SE DOCUMENTS

I, RONALD FILOCOMO, do hereby certify that I have served a true and correct copy of the following document,

## **MOTION FOR EARLY TERMINATION OF**
## **SUPERVISED RELEASE**

upon the court and the office of the United States Attorney:

**Nadia Elizabeth Moore**
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820

**Clerk of the U.S. District Court**
Eastern District of New York – Brooklyn
225 Cadman Plaza East
Brooklyn, NY 11201

by placing it in a sealed, postage prepaid envelope by United States Postal Mail

on the _____ $6$ _____ day of _____ July _____, 2021.

_____
RONALD FILOCOMO
*Pro Se* Movant

Clerk of the U.S. District Court
Eastern District of New York – Brooklyn
225 Cadman Plaza East
Brooklyn, NY 11201

**CPU**

U. S. POSTAGE
$0.00
CMM    0000
rlg: 33483
est: 33444
7/01/21
R230SM148/66



# PRIORITY® MAIL

FROM:

- Expected delivery ~ : use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For detail~ ~ exclusions see the
Domestic Mail Manual at *http://pe.usps.com*
** See International Mail Manual at ~ ~nd limitations of coverage.

### PRIORITY ★ MAIL ★

🦅 **UNITED STATES POSTAL SERVICE®**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

U S P S

FROM:
Ronald Filocomo
3561- Silverlace Lane
Boynton Beach FL 32456

**FLAT RA**
ONE RATE ■ ANY


UNITED STATES POSTAL SERVICE®
USPS TRACKING #

9114 9022 0078 9647 0835 90

**TRACKED ■ ~NSURED**

TO:
Clerk of the U.S. District
Eastern District of New York
225 Cadman Plaza Brooklyn
East
Brooklyn, N.Y. 11201

To schedule free Package Pic~
scan the QR code.



|||||| PS00001000014 ||||||

EP14F May 2020
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

Label 228, March 2016     FOR DOMESTIC AND INTERNATIONAL USE

9114 9022 0078 9647 0835 90